# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KP-01263-SCT

*BRIAN L. BLUE AND SHERRI L. BLUE a/k/a BRIAN*
*LYNN BLUE a/k/a SHERRI LYNN BLUE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/96 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/11/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/2/98 |

**BEFORE PITTMAN, P.J., BANKS AND WALLER, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Brian and Sherri Blue, appellants herein, were each indicted for two counts of tax evasion in violation of **Miss. Code Ann. § 27-3-79**, by the grand jury of Hinds County during the September term of 1995. Both defendants, acting *pro se*, were found guilty on all counts in the circuit court of Hinds County, Mississippi following a six day trial before the Honorable L. Breland Hilburn. On October 7, 1995, the trial court imposed the following sentence:

**Brian Blue**

**COUNT I** - FIVE years in the custody of the Mississippi Department of Corrections. TWO years suspended THREE to serve.

**COUNT II-** FIVE years in the custody of the Mississippi Department of Corrections. FIVE years suspended. FIVE years supervised probation. Sentence in Count II to run consecutive to

the sentence in Count I. Defendant shall pay restitution in the amount of taxes owed in this cause to be paid over probationary period.

**Sherri Blue**

**COUNT I -** FIVE years in the custody of the Mississippi Department of Corrections. FOUR years suspended. ONE to serve.

**COUNT II -** FIVE years in the custody of the Mississippi Department of Corrections. FIVE years suspended. Sentence in Count II to run consecutive to the sentence in Count I. Defendant shall pay restitution in the amount of taxes owed in this cause to be paid over probationary period.

¶2. Following the trial court's denial of Motion for New Trial, defendants timely filed their notice of appeal.

¶3. The trial court allowed both defendants to post an appeal bond in the amount of $5,000 in order to prepare for their federal tax evasion trial.[(1)]

## STATEMENT OF THE FACTS

¶4. The defendants in the lower court and the appellants herein are Dr. Brian L. Blue ("Dr. Blue") and his wife, Sherri. Dr. Blue is a chiropractor in Meridian, Mississippi, where he and Sherri have resided for approximately fifteen (15) years. Sherri serves as the office manager for the chiropractic clinic. In the late 1980's Dr. Blue had a series of audits by the IRS[(2)] as well as the Mississippi State Tax Commission the results of which were unfavorable causing the Blues to owe additional taxes. The Blues have failed to file or pay state income taxes since 1988. However, the only years involved in the trial below were 1990 and 1991.

¶5. The Mississippi State Tax Commission began a criminal investigation on February 17, 1993. Mr. Albert Rowell, a criminal investigator with the State Tax Commission, testified that during his first interview with Dr. Blue, Dr. Blue told him that "he had no tax liability because it was his understanding that the only taxes that were due were those from the manufactory [sic] of alcohol, tobacco, firearms; that he had no income from those sources; that he was not a citizen of the United States nor a resident of Mississippi, therefore, he could owe no state income tax." Mr. Rowell further testified that during this meeting, he asked Dr. Blue for records of his income at which time Dr. Blue said the records had been destroyed. Dr. Blue told Mr. Rowell that he burned all of his records in a bonfire on the day he "untaxed" himself.

¶6. Mr. Rowell first interviewed Sherri Blue on March 18, 1993. Sherri Blue said she wanted to talk about an organization called the Pilot Connection Society[(3)] which she and Dr. Blue joined in April of 1992. The Blues claim that it was the fault of the teachings of the Pilot Connection that caused them to be "in this trouble." Because of their involvement with the Pilot Connection, the Blues believed that the Internal Revenue Code which levies taxes was illegal, unenforceable, null and void.

¶7. Mr. Rowell subpoenaed the Blues' records from the banks. Mr. Rowell then agreed to back out of the case and give Dr. and Mrs. Blue an opportunity to prepare the returns and pay the tax. However, when there were no returns filed, Mr. Rowell re-entered the case.

¶8. It was then discovered that sometime in 1992, the Blue's had transferred all of their assets including their home, checking accounts, vehicles and other real and personal property into 27 different trusts such that Brian Blue had zero assets. While the State contends that the Blues transferred their assets into trusts to hide them from State Tax Commission, the Blues argue that they did it for purposes of estate planning - to ensure that their children would have a place to live and money to live on in the event anything tragic happened to them.

¶9. Finally, the Blues filed Chapter 7 bankruptcy in an attempt to have their tax debt discharged. Once again the Blues turned to a company called Fiscal Resolutions out of Salt Lake City, Utah who charged them $8100 to file the bankruptcy for them.

¶10. Sam Corder, a criminal investigator with the Mississippi State Tax Commission, testified that while the Blues claim they have no money and therefore could not pay their taxes that is not true. Mr. Corder testified that upon reviewing the Blues' bank records, he learned that in 1990, the Blues had three checking accounts into which they deposited $204,377.66. Since there were no records to indicate the exact amount of the Blues' expenses for the year 1990, the State Tax Commission used the numbers the Internal Revenue Service came up with in their audit of the Blues for 1990. The total amount of taxable income for the Blue's for 1990 after all of the allowable deductions were subtracted, was $130,528.76 The amount of taxes the Blues owed on this amount was only $6,376.44. The gross deposits for 1991 in the Blues' checking accounts was $332,468.79. Mr. Corder explained the discrepancy in the Blues income in 1990 and 1991 by stating that when the IRS first began its audit, Mr. Blue refused to turn over any records; the auditor, therefore, just used the best information available to come up with the amount of income. However, after the criminal investigation began, the State Tax Commission subpoenaed the Blues' bank records and learned that their income was considerably more than they thought. But the State Tax Commission used the auditor's numbers to the Blues benefit. The total amount of taxable income for the Blues for 1991 was $143,912.85. The total amount of taxes the Blues owed on this amount was only $7,045.64. Then in 1992, the Blues began to shift their money from their regular accounts to an account named Milk Management Trust, Honey Trust, and the Blue Chiropractic Clinic Trust. Mr. Blue testified that he had no money after his money was transferred into the 27 trusts.

## ANALYSIS

**I. THAT THE MISSISSIPPI STATE TAX COMMISSION, WITH THE ASSISTANCE OF THE FEDERAL INTERNAL REVENUE SERVICE, DID DELIBERATELY FAIL TO PROVIDE TIMELY AND CRUCIAL INFORMATION TO THE APPELLANTS AND THE PUBLIC AT LARGE IN VIOLATION OF THEIR PUBLIC DUTIES; SAID FAILURE BEING A PROXIMATE CAUSE OF THIS INSTANT CASE. THAT THE MISSISSIPPI STATE TAX COMMISSION, WITH THE ASSISTANCE OF THE FEDERAL INTERNAL REVENUE SERVICE, DID DELIBERATELY FAIL TO ENFORCE THE LAWS OF THE STATE OF MISSISSIPPI AND THE UNITED STATES; SAID FAILURE BEING A PROXIMATE CAUSE OF THIS INSTANT CASE. THAT THESE FAILURES ON THE PART OF THE MISSISSIPPI STATE TAX COMMISSION AND THE FEDERAL REVENUE SERVICE WERE PART OF AN ONGOING POLICY OF ENTRAPMENT FOR THE PURPOSE OF CREATING**

**REVENUE.**

¶11. In this issue, the Blues are incredibly claiming they were entrapped by the State Tax Commission because there were no public warnings that the teachings of the Pilot Connection were unlawful. And they are also claiming that the amount the State Tax Commission collected from individuals associated with the Pilot Connection was significantly higher than it would have been if these individuals had not followed these teachings.

¶12. This Court held in *Walls v. State*, 672 So. 2d 1227 (Miss. 1996) as follows:

> Entrapment has been defined as 'the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense.' The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possesses the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense.
>
> ***
>
> Before a defendant can raise the defense of entrapment, he or she is required to show evidence of government inducement to commit the criminal act and a lack of predisposition to engage in the criminal act prior to contact with government agents.
>
> ***
>
> The standard of review in these cases is as follows:
>
> [W]hether an issue should be submitted to the jury is determined by whether there is evidence which, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue.

*Walls*, 672 So. 2d at 1230 (citations omitted).

¶13. By the time the Blues joined the Pilot Connection in April of 1992, they had already failed to file and pay their income taxes for four years. The tax commission did nothing to mislead nor to injure the defendants.

¶14. Dr. Blue testified that the Pilot Connection had nothing to do with the Blues not paying their state income taxes. There was no state involvement in the Blues' failure to pay their income tax and as such the defense of entrapment is not available to them.

> **II. THAT THE STATE DID FAIL TO PROVE SUBJECTIVE BAD FAITH ON THE PART OF THE APPELLANTS IN THIS MATTER. THAT THIS FAILURE TO SO PROVE SUBJECTIVE BAD FAITH SHOULD HAVE RESULTED IN EITHER A DISMISSAL OF CHARGES ON THE PART OF THE TRIAL COURT, OR A VERDICT OF NOT GUILTY ON THE PART OF THE JURY.**

**III. THAT THE TRIAL COURT DID COMMIT PLAIN ERROR BY ALLOWING THE ENTRY OF JURY INSTRUCTIONS BY THE STATE THAT DID SET FORTH OBJECTIVE STANDARDS FOR TAX EVASION; SAID OBJECTIVE STANDARDS HAVING BEEN RULED AS GROUNDS FOR REVERSIBLE ERROR BY THE US SUPREME COURT.**

¶15. Next the appellants claim that because the State failed to show subjective bad faith on the part of appellants, the State failed to meet its burden of proof. Further the appellants claim that the trial court committed reversible error by giving the State's jury instructions which defined objective standards for tax evasion. Because these issues require the same discussion, we address them together. The appellants claim that they were acting under the misguided teachings of the Pilot Connection; and therefore, had no bad faith. The appellants rely on case law out of the Second Circuit Court of Appeals of the United States which is not binding on this Court to make their argument.

### Subjective Bad Faith

¶16. As has been previously stated, the appellants did not join the Pilot Connection until they had failed to file and pay state income taxes for four years. Evasion of income taxes is a malum prohibitum crime as opposed to a malum in se crime. *Black's Law Dictionary* defines malum prohibitum as a wrong prohibited; a thing which is wrong *because* prohibited; an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law; an act involving an illegality resulting from positive law.

¶17. The Blues were indicted in violation of Miss. Code Ann. § 27-3-79 which reads in its pertinent part as follows:

> (2) Any person eligible for the tax amnesty program and who fails to make total payment of the taxes due during the tax amnesty period or any person who, after July 1, 1986, willfully attempts in any manner to evade or defeat any tax imposed by the State Tax Commission, or assists in the evading of such tax or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than One Hundred Thousand Dollars ($100,000.00) and, in the case of a corporation, not more than Five Hundred Thousand Dollars ($500,000.00) , or imprisoned not more than five (5) years, or both.

Miss. Code Ann. § 27-3-79 (Supp.1997).

¶18. "'Under the common law, proof of criminal intent is a necessary element in the prosecution of every criminal case, (except those offenses which are merely malum prohibitum)'." *Collins v. City of Hazelhurst*, No. 95-KA-00271-SCT, 1997 WL 784212 at 5 (Dec. 22, 1997 Miss.) (*quoting Lee v. State*, 244 Miss. 813, 146 So.2d 736, 738 (Miss.)). We have stated that intent to commit a crime is not required, but rather the mere intent to commit the act is sufficient where certain acts have been enumerated unlawful by statute.

¶19. Nonpayment of income taxes is a statutory violation and is therefore a malum prohibitum crime; therefore, the appellants' state of mind is irrelevant. Rather the relevant point is that the Blues intended not to pay and did not pay their income taxes for 1990 and 1991 (the years at issue here),

which violates the statutes of the State of Mississippi.

**Jury Instructions**

¶20. "'With any granted jury instruction challenged on appeal, two questions are necessarily implicated: Does the instruction contain a correct statement of the law? and Is the instruction warranted by the evidence?'" ***Church v. Massey,*** 697 So.2d 407, 410 (Miss. 1997) (*quoting* **Hill v. Dunaway**, 487 So.2d 807, 809 (Miss.1986)). This Court articulated the standard of review necessary when considering the grant or denial of jury instructions in ***Hill***.

¶21. "It is hornbook criminal law that before a conviction may stand the State must prove each element of the offense. Not only is this a requirement of the law of this State, due process requires that the State prove each element of the offense beyond a reasonable doubt." ***Neal v. State***, 451 So.2d 743, 757 (Miss.1984) (citations omitted). A logical corollary of this principle is that, because the State has to prove each element of the crime beyond a reasonable doubt, then the State also has to ensure that the jury is properly instructed with regard to the elements of the crime. See also ***Hosford v. State***, 525 So.2d 789, 792 (Miss.1988) (*quoting* ***Adams v. State***, 202 Miss. 68, 75, 30 So.2d 593, 596 (Miss.1947)) ("'In conducting a criminal case, the prosecuting attorney must be fair and impartial, and see that defendant is not deprived of any constitutional or statutory right'.").

¶22. Because the evidence contained in the record supported the jury instruction which the appellants' brief describes as error coupled with the fact that the jury instruction in question accurately defines tax evasion, this issue is without merit.

> **IV. THAT THE TRIAL COURT DID COMMIT PLAIN ERROR BY NOT ALLOWING IN A LARGE NUMBER OF PERTINENT JURY INSTRUCTIONS SUBMITTED BY THE APPELLANTS; INSTEAD, LIMITING THEM TO AN ARTIFICIAL NUMBER OF 6 JURY INSTRUCTIONS; SAID FAILURE PREVENTING THE JURY FROM KNOWING OF PERTINENT CASE LAW ON SUCH ISSUES AS SUBJECTIVE GOOD FAITH, ETC.**

¶23. The appellants' fourth assignment of error claims first that the trial court arbitrarily denied many of their submitted jury instructions and that the trial court did not allow the defendants to present jury instructions containing the issue of subjective bad faith. The appellants herein presented a total of 29 jury instructions to the trial judge of which 6 were given to the jury.

¶24. Rule 3.07 of the Uniform Circuit and County Court Rules governs the issuance of jury instructions and reads as follows:

> At least twenty-four hours prior to trial each of the attorneys must number and file the attorney's jury instructions with the clerk, serving all other attorneys with copies of the instructions. Except for good cause shown, the court will not entertain a request for additional instruction or instructions, which have not been prefiled. At the conclusion of testimony, the attorneys must select no more than six jury instructions on the substantive law of the case from the instructions prefiled and present them to the judge. The court, for good cause shown, may allow more than six instructions on the substantive law to be presented. The attorneys must dictate into the record their specific objections to the requested instructions stating the grounds

for each objection. Instructions will not be given after closing argument has begun except in extreme cases of injustice and in such cases the adverse parties shall have an opportunity to submit other instructions.

URCCC 3.07.

¶25. The procedural bar notwithstanding, we will briefly address this issue. This Court has previously addressed the issue of limiting the jury instructions to six. In ***Young v. State***, 451 So.2d 208, 211 (Miss.), cert. denied, 469 U.S. 860 (1984), this Court addressed the six-instruction limit contained in Rule 5.03[(4)] and held that the number of instructions submitted to the court and the jury "lies within the sound judicial discretion of the trial judge who may limit or expand 'for good cause shown'." There, we held that the six-instruction limit is a "numerical beginning point ... [not] an inflexible rule.... " **Id.** However, an abuse of discretion by the trial court in limiting the number of instructions alone is insufficient to require reversal by this Court. ***Shaw v. State***, 540 So.2d 26, 29-30 (Miss.1989) (citing ***Carter v. State***, 493 So.2d 327, 331 (Miss.1986)). When reviewing the submission or omission of jury instructions, this Court has repeatedly held that this Court reviews the "'instructions as a whole, with no one instruction taken out of context'." ***Evans v. State***, Nos. 93-DP-01173-SCT, 94-CA-00176-SCT, 1997 WL 562044, at *84 (Miss. Sept. 11, 1997) (*quoting* **Heidel v.State**, 587 So.2d 835, 842 (Miss.1991))

¶26. Further, this appeal was taken asserting that the defendants should have been allowed to have the jury instructed on the issue of subjective bad faith to commit tax evasion. However, as addressed above, income tax evasion is a malum prohibitum crime making the state of mind of the defendants irrelevant. The defendants' case was properly defined within the six jury instructions that were given.

### V. THAT THE TRIAL COURT DID COMMIT PLAIN ERROR BY ALLOWING THE STATE TO ENTER THE APPELLANTS' BANK RECORDS INTO EVIDENCE, EVEN AFTER IT WAS SHOWN THAT THE STATE DID NOT COMPLY WITH MISSISSIPPI RULES OF COURT AS REGARDS [SIC] THE PRODUCTION OF EVIDENCE, INTENDED TO BE USED AT TRIAL, DURING DISCOVERY.

¶27. The appellants, here, argue that the trial court committed error by allowing the appellants' bank records into evidence claiming that they were not provided said records in discovery. The record contains adequate evidence that these allegations are not accurate. The State made the records available to the Blues. The State did not, however, allow the Blues to remove the records from the State Tax Commission's office in Meridian.

¶28. Rule 9.04 of the Uniform Circuit and County Court Rules governs this issue and reads in its pertinent part as follows:

A. Subject to the exceptions of subsection "B", below, the prosecution must disclose to each defendant or to defendants attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:

***

5. Any physical evidence and photographs relevant to the case or which may be offered in evidence . . .

[URCCC 9.04](URCCC 9.04).

¶29. The State did not fail to provide appellants their bank records for review before they were offered in evidence.

¶30. This Court said in *White v. State*:

> This Court held recently in *Hentz v. State*, 489 So.2d 1386, (Miss.1986), that in criminal cases the prosecution should make available to defense attorneys all such materials in their files and allow defense attorneys to determine whether the material is useful in the defense of the case, (at 1388). All of the evidence in the record supports the contention that the prosecutor in the case at bar did indeed comply fully with this recommendation. We commend the prosecutor for his compliance and cooperation in making his files available to the defense.
>
> There is nothing in the record other than unsupported suggestions by appellant to show the existence of any records or files pertinent to the case at bar not produced by the prosecution. Appellant has failed to show any discovery violation sufficient to warrant reversal of this case.

*White v. State*, 498 So. 2d 368, 370-71 (Miss. 1986). The prosecution fully complied with the rule governing discovery.

### VI. THAT THE TRIAL COURT DID COMMIT PLAIN ERROR BY ALLOWING THE STATE TO SUBMIT JURY INSTRUCTIONS ON THE DAY BEFORE JURY DELIBERATIONS WERE TO START, IN VIOLATION OF MISSISSIPPI RULES OF COURT, SAID VIOLATION BEING PREJUDICIAL IN THAT THE STATE WAS ABLE TO WRITE ITS JURY INSTRUCTIONS BASED ON THE STRENGTHS AND WEAKNESSES OF THE APPELLANTS' PRESENTATION INSTEAD OF THE STRENGTHS AND WEAKNESSES OF ITS OWN CASE.

¶31. Finally, the appellants argue that the State failed to submit their jury instructions twenty-four hours in advance as required by Rule 3.07 (see issue **IV** above). The appellants claim that the State was able to submit custom instructions tailored to the evidence the defendants presented in the case.

¶32. In the case of *Carter v. State*, the appellant contended that under Rule 2.10 of the Uniform Circuit Court Rules, the State's instruction should have been prefiled twenty-four (24) hours ahead of trial; that the prosecution failed to do so; and that reversible error was committed. This Court held that absent prejudice to the defendant, the court's failure to require the State to pre-file its jury instructions was harmless error. *Carter v. State,* 493 So. 2d 327, 330-31 (Miss. 1986) (*citing Gray v. State*, 387 So.2d 101(Miss.1980); *Ferrill v. State*, 267 So.2d 813 (Miss.1972). Mississippi Uniform Criminal Rules of Circuit Court Practice 5.03; *Evans v. State*, 457 So.2d 957 (Miss.1984)).

¶33. We find that the failure of the State to submit its jury instructions within twenty-four hours of the trial was harmless error. The State did submit its jury instructions at 10:45 a.m. on Friday and the court did not reconvene until 1 p.m. on Monday. The appellants had ample time to review the State's jury instructions and as such they were not prejudiced in any way by the State's failure to comply with

Rule 3.07. Therefore, this issue is without merit.

## CONCLUSION

¶34. Because the appellants herein fail to allege any reversible error by the trial court, this case is affirmed. The appellants offer no evidence that they were in any way wrongfully prejudiced by any actions of the trial court. The case *sub judice* was set for trial three times before the trial took place allowing the defendants more than enough time in which to review any bank records the State intended to present in evidence.

¶35. Further, any allegations of entrapment, as is evident from the above discussion, are without merit. The appellants testified that they did not join the Pilot Connection until 1992, four years after the appellants stopped paying income tax.

¶36. This Court has held many times that a statutory violation is a malum prohibitum crime making tax evasion wrong by virtue of the intended failure to pay and not based on whether they possessed bad faith in failing to pay those taxes. It is this Court's view that when the defendants herein violated § 27-3-79 of the Miss. Code Ann., the crime they committed - tax evasion- became a wrong within itself.

¶37. For the reasons stated, this the finding of the Hinds County Circuit Court is affirmed.

¶38. **AS TO BRIAN L. BLUE: COUNT I: CONVICTION OF TAX EVASION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TWO (2) YEARS SUSPENDED AFFIRMED. COUNT II: CONVICTION OF TAX EVASION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE (5) YEARS SUSPENDED AND FIVE (5) YEARS SUPERVISED PROBATION AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I. BRIAN L. BLUE SHALL PAY RESTITUTION IN THE AMOUNT OF TAXES OWED IN CAUSE # 95-3-261-02 LBH TO BE PAID OVER PROBATIONARY PERIOD.**

**AS TO SHERRI L. BLUE: COUNT I: CONVICTION OF TAX EVASION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR (4) YEARS SUSPENDED AFFIRMED. COUNT II: CONVICTION OF TAX EVASION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE (5) YEARS SUSPENDED AND FIVE (5) YEARS SUPERVISED PROBATION AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I. SHERRI L. BLUE SHALL PAY RESTITUTION IN THE AMOUNT OF THE TAXES OWED IN CAUSE # 95-3-262-02 LBH TO BE PAID OVER PROBATIONARY PERIOD.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. Both defendants were convicted of federal tax evasion and sentenced to prison terms of 24 and 27 months to be served concurrent with the State sentences.

2. The case *sub judice*, obviously, only involves the Blues' failure to pay Mississippi state taxes.

3. The Pilot Connection Society is a national group of tax-protesters who claim that there are only thirteen legal states, the original thirteen colonies. All other states have never been truly admitted to the Union. It also claims that the Internal Revenue Service is not a true government organization, but, rather it is a private organization which has its headquarters in the state of Delaware.

4. This rule is now 3.07.