887 So.2d 804 (2004)
Charles William MORRIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00497-COA.
Court of Appeals of Mississippi.
May 18, 2004.
Rehearing Denied November 30, 2004.
*805 Tom Sumrall, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. Charles William Morris was convicted of rape and murder in the Circuit Court of Harrison County, Second Judicial District. Morris was sentenced to serve twenty-five years for rape and a life sentence for murder to run consecutively with the rape sentence. Aggrieved by his conviction and sentence, Morris appeals to this Court and raises the following two issues.

ISSUES PRESENTED
I. Did the trial court err by allowing the admission of DNA evidence through the testimony of Dr. Sinha, the lab director who did not actually perform the DNA tests?
II. Did the trial court deny Morris due process of the law by admitting the results of the DNA tests performed by Reliagene?

STATEMENT OF FACTS
¶ 2. The record in this case indicates that during March of 1996, Julie Welch lived on Second Street in Gulfport, Mississippi. At that time, Welch also owned another house on 18th Street in Gulfport which she rented to appellant Morris and Jarrett Leon. In March, Welch had a conversation with Leon about past-due rent and Leon replied that he had given Morris the money to pay Welch. Welch was upset and made it clear that she did not receive the money from Morris. Morris suggested to Leon that they sell some of Welch's furniture to make some money. According to Leon, Morris called several antique dealers and the two men placed the furniture outside on the lawn. Several dealers testified that they were contacted and came by the house on 18th Street to purchase the furniture.
¶ 3. Several people who knew Welch became suspicious after they had not seen her for almost a week. Welch's former boyfriend, Ian Clark, and his mother, Shirley Clark, testified that they had not seen or heard from Welch in several days and were concerned. Ms. Clark went by Welch's home on 18th Street and saw the furniture on the lawn for sale. Ms. Clark then contacted the police and filed a missing persons report. Leon testified that upon seeing a lady with a cell phone in the front yard, he and Morris escaped the house through the back window, leaving their personal belongings.
*806 ¶ 4. Ian Clark testified that he stopped by Welch's house on 18th Street and was met on the front steps by Morris. Morris would not allow Clark into the house and said that he had not seen Welch recently. Clark noticed Welch's purse and coat on the steps. Clark returned to the house several days later to discover disturbed dirt under the house. On March 23, 1996, Welch's body was found in a shallow grave at that location by police. Dr. McGarry, a forensic pathologist, testified that Welch had been dead for approximately two weeks before she was found. McGarry performed the autopsy on Welch and testified that Welch's cause of death was manual strangulation. He also testified to Welch's body having various bruising and other injuries which would be consistent with non-consensual intercourse.
¶ 5. Morris was indicted by a Harrison County grand jury for the rape and murder of Julie Welch. The trial, which commenced on November 5, 2002, resulted in a jury verdict of guilty on both counts. The trial court sentenced Morris to serve twenty-five years for the rape conviction and life for the murder conviction to run consecutively with the rape sentence. Morris' motion for new trial was overruled, and he now appeals from the order denying that motion.

LEGAL ANALYSIS

I. DID THE TRIAL COURT ERR BY ALLOWING THE ADMISSION OF DNA EVIDENCE THROUGH THE TESTIMONY OF DR. SINHA, THE LAB DIRECTOR WHO DID NOT ACTUALLY PERFORM THE DNA TESTS?
¶ 6. Morris asserts that the trial court erred by allowing Dr. Sinha to testify as to the results of DNA tests that he personally did not conduct. Morris argues that Dr Sinha's testimony was inadmissible hearsay, a violation of his Sixth Amendment right to confront the lab technician who performed the tests and a violation of Mississippi Rule of Evidence 703.
¶ 7. Dr. Sinha, the lab director of Reliagene Laboratory in Louisiana, was allowed to testify over defense's objection regarding certain DNA tests which were conducted in the case. Dr. Sinha testified about a photograph which depicted the DNA tests results and about the detailed DNA report compiled by Reliagene. Dr. Sinha stated that the DNA extracted from blood samples on Welch's bedspread matched Julie Welch and that DNA extracted from sperm samples on the bed spread matched Morris.
¶ 8. At trial, Morris objected to Dr. Sinha's testimony because Dr. Sinha did not conduct the DNA tests. Our standard of review regarding the admissibility of evidence is well-settled. The admissibility of evidence rests within the discretion of the trial court. Wash v. State, 790 So.2d 856, 858(¶ 5) (Miss.Ct.App.2001). The trial court's discretion must be exercised within the guidelines of the Mississippi Rules of Evidence and this Court will reverse only when an abuse of discretion resulting in prejudice to the accused occurs. Id.
¶ 9. This Court has held that the trial court did not err by admitting testimony from an assistant lab director because the lab director supervised the work of the technician who performed the tests. Adams v. State, 794 So.2d 1049, 1057-58 (¶ 24) (Miss.Ct.App.2001); see also McGowen v. State, 859 So.2d 320, 339 (¶ 67) (Miss.2003). In this case, Dr. Sinha testified that as lab director, he trained the technician who performed the DNA testing. He examined her proficiency, checked the protocols and checked and signed all DNA test results. The DNA reports had his signature on them because he confirmed that the DNA results in Morris' *807 case were accurate. Therefore, the trial court did not err by allowing Dr. Sinha to testify regarding the DNA test results.

II. DID THE TRIAL COURT DENY MORRIS DUE PROCESS OF THE LAW BY ADMITTING THE RESULTS OF THE DNA TESTS PERFORMED BY RELIAGENE?
¶ 10. Morris argues that the trial court denied him due process of the law by admitting the results of the DNA tests performed by Reliagene because at the time the first tests were conducted Reliagene was not certified to perform DNA testing. Morris urges this Court to adopt the view of the National Research Council on the admissibility of DNA evidence. According to Morris, the Council believes that courts should require that DNA evidence be conducted by labs which are certified or accredited before the results of such tests are admissible.
¶ 11. Dr. Sinha stated that Reliagene conducted two rounds of tests, one in 1997 and another in 1999. Morris' trial counsel made a point at trial of cross-examining Dr. Sinha on Reliagene's certification. Dr. Sinha testified that Reliagene was certified by the American Association of Bloodbanks in 1992 for paternity DNA testing. He also stated that Reliagene was certified by the National Forensic Science Technology Center on September 15, 1997. He admitted that the first DNA tests conducted in Morris' case were earlier in 1997 prior to the certification.
¶ 12. Dr. Sinha stated on cross-examination that at the time of Morris' trial there was no law which required labs to be licensed or accredited prior to conducting DNA tests. He stated that in order for a lab to be certified by one of the organizations, years of previous testing is reviewed to see if it complies with proper standards. Dr. Sinha testified that the National Forensic Science Technology Center had just started certifying when Reliagene's certificate was administered. As shown from the certificate, Reliagene was the third lab in the country to receive certification from that organization.
¶ 13. Morris argues that he was denied due process of the law under the Fourteenth Amendment but he fails to demonstrate which fundamental right he was denied. He has also failed to establish that the trial judge used an incorrect rule of law in his case. While the opinions of the National Research Council are enlightening, this Court's duty is to adhere to the law. The record indicates that the trial judge was aware of the guidelines on the admissibility of DNA evidence outlined in Polk v. State, 612 So.2d 381, 390 (Miss.1992).[1] On the record, the trial judge ruled that the DNA evidence was admissible. His reasoning follows the Polk guidelines: (1) Reliagene's protocols are generally accepted in the scientific community. Dr. Sinha testified on that point; (2) Reliagene used current techniques capable of producing reliable results. Dr. Sinha stated that Reliagene undergoes strict proficiency testing to ensure that its protocols are accurate and produce results which are duplicated by other labs in the country. Dr. Sinha testified that Reliagene must use methods or protocols which allow it to *808 reach the same results as other labs doing similar tests; (3) Reliagene performed generally accepted scientific techniques without error. After hearing the testimony of Dr. Sinha, the trial judge found that "the protocols were indeed followed in this particular test." We find that Morris did not demonstrate a denial of a fundamental right and the trial court applied the correct law in this case. Therefore this issue is without merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, SECOND JUDICIAL DISTRICT, OF CONVICTION OF COUNTI  RAPE AND SENTENCE OF TWENTY-FIVE YEARS AND COUNT II  MURDER AND SENTENCE OF LIFE WHICH IS TO RUN CONSECUTIVELY WITH COUNT I IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] This Court is aware that the Comment to Mississippi Rule of Evidence 702 regarding expert testimony which was amended on May 29, 2003, notes the 2000 amendment of the Federal Rule of Evidence 702 in response to Daubert. Our supreme court has recently held that following the amendment to Rule 702, the Frye"general acceptance test" has been replaced by the Daubert test. See Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 39 (¶ 23) (Miss.2003). However, the trial judge applied the correct law at the time of trial which was November 5, 2002.