942 So.2d 172 (2005)
Deborah CHAMPLUVIER a/k/a Deborah Marie Champluvier, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KP-02581-COA.
Court of Appeals of Mississippi.
December 13, 2005.
Rehearing Denied March 21, 2006.
*175 Deborah Champluvier, Appellant, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., BRIDGES and GRIFFIS, JJ.
BRIDGES, J., for the Court.
¶ 1. On November 4, 2003, a DeSoto County jury entered a verdict finding Deborah Champluvier guilty on two counts of embezzlement. The trial court sentenced Champluvier to serve five years for both counts to and to serve both concurrently with four and a half years suspended from each. Champluvier appeals this verdict on fourteen issues.

STATEMENT OF THE FACTS
¶ 2. On September 18, 1998, Deborah Champluvier created Perfect Treasures Furniture, L.L.C. in Horn Lake with L.L. Ross. No one ever found a written executed operating agreement for Perfect Treasures On March 22, 1999, Ross had a stroke and later died intestate leaving his half of the business to his heirs on March 25. The State alleged that Champluvier took $6,000 of the $6,202.07 out of the operating account March 23, the day after L.L.'s stroke. Champluvier claimed that the money was to play her back for a loan to the business.
¶ 3. Thomas Ross became administrator of his father's estate including acting as the liquidating trustee of L.L.'s business interests. The Chancery Court of DeSoto County entered an agreed order granting judicial dissolution, preliminary injunction and other relief on June 11, 1999, that kept a prior temporary restraining order in effect. The order found that Champluvier individually and as a member of Perfect Treasures disposed of numerous assets, inventory and proceeds from Perfect Treasures and, thus, could not carry on the business in conformity with the certificate of formation. The order also stated that Champluvier denied Ross access to the books, records, inventory, and premises to such a point as to constitute pervasive fraud and unfairness toward the membership interest of L.L. Ross.
¶ 4. Furthermore, the order found that Champluvier had misapplied and wasted the assets of Perfect Treasures after L.L.'s death as well as failed to pay the debts and creditors. The order required Champluvier to return all proceeds, cash, and/or checks, accounts, checkbooks, check registers, and/or other banking records or documents to Thomas Ross. Thomas testified that Champluvier never turned any funds over to him after this order that required her to do so. After this order, Champluvier withdrew the remaining $445 dollars from a Perfect Treasures's bank account without turning it over to Thomas Ross even thought the order expressly said that, "Defendant is hereby restrained from disposing of any accounts, funds, assets, inventory and/or proceeds of Perfect Treasures."
*176 ¶ 5. Thomas's attorney during the estate process, Barry Bridgforth, testified that he never received documentation from Champluvier to show where she loaned the company money as the order required him to. Bridgforth also testified that the check for $6000 had a date of March 22, on it but the corresponding ledger book the check came out of had the date March 23. At first Champluvier testified in her deposition that she took the money to purchase used furniture. She never provided information as to the seller of this used furniture. Bridgforth also testified that Champluvier said that part of the money was needed because the landlord would only take cash yet the ledger showed checks written out to the landlord that month. He also testified about the $445 dollar withdrawal from Perfect Treasure's second account that Champluvier withdrew after the hearing granting the injunction. Bridgforth further testified that Champluvier never gave the money back or tried to give the money back as required by the order. She also filed for bankruptcy to prevent the estate from collecting from her.
¶ 6. Champluvier originally hired Randall Pierce to represent her in this matter. However, she filed her own motions including motions that accused Pierce of forging her signature on documents and conspiring with the prosecution. She also admitted that Bill Cockrell helped her with her motions but later downplayed the extent that he helped her. Pierce moved to remove himself as counsel due to the allegations but Champluvier filed a motion for the trial court to deny this request. When asked how she could want an attorney who did the things she accused Pierce off she responded, "Well, I don't know that he forged my signature. I mean I don't know that . . . I'm guessing." She also felt that the employment contract between the two should require he remain her attorney.
¶ 7. The trial court also granted Champluvier's motion to proceed in forma pauperis and appointed Jack R. Jones, III as counsel for her. However, Champluvier soon moved to have the court remove Jones as "ineffective counsel the same as no counsel" since he could not recite the entire Mississippi and United States Constitutions. When the court decided to appoint her new counsel, Clay Vanderburg, she objected to receiving new counsel and argued that Vanderburg could not serve as effective counsel after her five minute interview with him.
¶ 8. She later filed a motion to remove Vanderburg from the case as well that the trial court denied. The trial court urged her to use the assistance of the appointed counsel but noted that she had the right to represent herself if she chose to do so. The trial court retained Vanderburg to assist Champluvier if she chose to during the trial as her standby counsel.
¶ 9. Right before her trial began, Champluvier accused two different witnesses of saying derogatory comments about her close enough for the jury to hear them. The trial judge listened to April Brown and Bobbie Yates describe things they saw or overheard from Thomas Ross or A.C. Leroy Easley. No one in the jury responded that they overheard Easley and the juror who met Ross at a cigarette break said they did not discuss the case. The juror said that all Ross said concerned that his father owned a Furniture Store and that he felt he could remain impartial about the case.
¶ 10. Champluvier called upon her daughter, April Brown, and the stores truck driver George Friday, who both testified that she purchase $4000 worth of used furniture at the time in question. Champluvier argued that she could not act as the agent or servant of the company and also be an owner or member. Further, *177 she argued that she could not embezzle the money because she owned it. However, the jury convicted Champluvier on both counts of embezzlement.
¶ 11. The trial judge also caught her lying under oath at her sentence hearing when she described selling all the merchandise in the store for her attorney bill's associated with the temporary restraining order. However, the temporary restraining order came after this sale to liquidate all the merchandise in the store. Champluvier then filed her appeal with fourteen issues of error. The brief surpasses the fifty page limit for the body of briefs as given by M.R.A.P. 28(g) by topping out at seventy-five pages. Champluvier also made sure to include every possible person from the Governor of Mississippi to every member of the Mississippi Bar as "Interested Persons".

ANALYSIS

Standards of Review
¶ 12. The Court conducts "a de novo review for determinations of legal questions. Findings of fact are given deferential treatment and are subject to the `manifest error/substantial evidence' standard." Russell v. Performance Toyota, Inc., 826 So.2d 719, 721 (¶ 5) (Miss.2002). "An appellate court reviews jurisdictional issues de novo by examining the facts set out in the pleadings and exhibits to determine the propriety of the proceedings." American Cable Corp. v. Trilogy Communications, Inc., 754 So.2d 545, 549 (¶ 7) (Miss.Ct.App.2000). The standard of review for denial of a motion for mistrial is abuse of discretion since it falls in the discretion of the trial judge. Caston v. State, 823 So.2d 473, 492 (¶ 54) (Miss.2002). For the court to admit evidence "[t]he trial court's discretion must be exercised within the guidelines of the Mississippi Rules of Evidence and this Court will reverse only when an abuse of discretion resulting in prejudice to the accused occurs." Morris v. State, 887 So.2d 804, 806 (¶ 8) (Miss.Ct. App.2004) (citing Wash v. State, 790 So.2d 856, 858 (¶ 5) (Miss.Ct.App.2001)).

I.

Miss.Code Ann. 97-23-19 Only Applies to Corporations
¶ 13. Champluvier first contends that since Mississippi Code Annotated 97-23-19 states "any director, agent, clerk, servant, or officer of any incorporated company," than the law only applies to corporations and not to limited liability companies. Champluvier wants this case to appear like Burroughs v. State, 406 So.2d 814, 815 (Miss.1981) where the indictment charged the defendant of embezzling fourteen black Angus cows that were in his possession by virtue of a trust agreement. Here the court found that a partner could not embezzle from the joint venture since they had a shared interest in the property.
¶ 14. The Court of Appeals also recently discussed this matter in Coleman v. State, 2004-KA-00346-COA, ___ So.2d ___ (Miss.Ct.App. Nov. 1, 2005) where in the Circuit Court of Leflore County convicted Coleman of embezzling funds from his church by using his position as a church deacon. The Court reversed the case arguing that a church did not fit the definition of an "incorporated company."
¶ 15. However, a LLC differs from a joint venture or a non-profit unincorporated religious society. Perfect Treasures also had its own bank accounts and Federal Tax ID number and was registered with the Secretary of States Office. Mississippi Code Annotated § 79-29-701 states, "A limited liability company interest is personal property. A member has no interest in specific limited liability company property." *178 Thus, an LLC is treated like a corporation in that it acts as a separate individual and owns property as a separate individual. The city also granted a business license to Perfect Treasures and not to either Ross or Champluvier. Champluvier clearly converted funds that did not belong to her, but to Perfect Treasures.
¶ 16. Furthermore, a church acts more like an assembly of individual persons that while the LLC acts as a separate business entity, just as a corporation does. The two also both often issue stock or other forms to show ownership to establish profit sharing unlike a church. Members do not form churches with the intent to make money and split the profits. Both a corporation and a LLC act to insulate its members from liability by creating a separate legal entity distinct and separate from its members. A member of either can usually transfer his ownership interest.
¶ 17. This case clearly fits the intent of the statute to prevent someone from embezzling assets from a company that legally belongs to the company and not the individual. The statute acts to prevent someone "by virtue of his office, place, or employment" from "convert[ing] to their own use." Since the company is not a person, this statute serves as the way to prosecute someone from fraudulently taking money from the LLC where he gained the ability as one of its members. The statute clearly did not intend to outlaw converting funds from an incorporated company but legalize unauthorized conversion of funds from an LLC. This would create another advantage to LLCs beyond the tax benefits to its members since the members could also embezzle all of the assets away from LLC and its members without fear of retribution. We reject this argument.

II.

Champluvier Did Not Act as a Servant, Agent or Employee
¶ 18. Champluvier continues to argue as she did at trial that the owner of a LLC cannot also act as an agent or servant. Mississippi Code Annotated § 79-29-303 states, "every member is an agent of the limited liability company for the purpose of conducting its business and affairs." Furthermore, Champluvier testified at trial that she worked in the furniture store and wrote checks on behalf of the store. In doing so she clearly acted as Perfect Treasures Furniture's agent.

III.

The DeSoto Circuit Court Lacked Jurisdiction
¶ 19. Champluvier contends that the Northern District of Mississippi Bankruptcy Court had exclusive jurisdiction over her. Champluvier points out that the State of Mississippi never filed any criminal affidavits or any accusations accusing her of embezzlement in bankruptcy court. At trial she also attempted to argue that since the bankruptcy court heard her bankruptcy claim that this criminal charge should remain in federal bankruptcy court.
¶ 20. However Mississippi Constitution art. 6, § 156 clearly gives the state circuit courts jurisdiction over criminal matters by saying, "The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court." Bankruptcy is vested in another court of law but criminal actions clearly fall within the jurisdiction of the circuit court. 11 U.S.C.A. § 105 concerns the powers of the bankruptcy court and does not grant the ability to try criminal embezzlement cases. Furthermore, because federal bankruptcy proceedings occurred near the same time does not prevent the State from prosecuting *179 crimes as seen in Blue v. State, 716 So.2d 567 (Miss.1998).

IV.

The DeSoto Circuit Court Lacked Subject Matter Jurisdiction
¶ 21. Perfect Treasures Furniture, LLC operated in Horn Lake in DeSoto County. Champluvier admittedly took the funds from Perfect Treasures in DeSoto County. The testimony of all the witnesses at trial clearly show that Champluvier's charged offense occurred in the same county of the circuit court that presided over her trial. As noted above, the Mississippi Constitution art. 6, § 156 grants circuit courts the right to hear criminal cases.
¶ 22. Champluvier further argues that the chancery court had subject matter jurisdiction since it had jurisdiction over the dissolution of Perfect Treasures. Mississippi Constitution art. 6, § 159 grants the chancery court full jurisdiction over matters of equity, divorce and alimony, testamentary matters, minor's affairs and lunacy. Criminal actions remain notably missing from this list. Champluvier argues that since the Mississippi Limited Liability Company Act does not have a criminal section then only chancery court can hear cases involving LLCs. However, Mississippi's embezzlement statue 97-23-19 clearly resides in the criminal codes section. Simply put, the bankruptcy court had jurisdiction over the bankruptcy provisions while the Circuit Court of DeSoto County had jurisdiction over the criminal issues and the DeSoto County Chancery Court had jurisdiction over the estate and equity issues.

V.

Trial Court Denied Appellant's Right to Confront Witnesses
¶ 23. Champluvier argues that the trial court denied her Sixth Amendment rights by failing to put the names of the witnesses from the grand jury hearing on the record. Champluvier also cites to Mississippi Constitution art. 3, § 26 to say that she had a right to confront her accusers at the grand jury stage. However this section does not grant that right although it grants the right to confront the witnesses at trial. "The right to confrontation of those testifying against a defendant, is a trial right," and does not apply to grand jury proceedings. Addkison v. State, 608 So.2d 304, 312 (Miss.1992)(citing Pennsylvania v. Ritchie, 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)).
¶ 24. Champluvier also makes an issue that the indictment left the witness line blank as well as other nonsensical objections that she did not have an accuser since no one sat next to the district attorney at trial. Since the State of Mississippi acts as her accuser it cannot logically sit next to the district attorney. Also nothing in Mississippi Code Annotated § 13-7-1 et seq., the State Grand Jury Act, requires witnesses in the grand jury indictment. In fact the trial court granted Champluvier ample opportunity to cross examine the witnesses presented before her even to the point of allowing her to object because a witness did not answer a question right and giving her numerous pauses in the proceedings to look over her notes during cross examination of the two witnesses presented against her.

VI.

Trial Court Denied Equal Protection Without a Constitutional Court
¶ 25. Champluvier contends that she did not have official court reporters for the case and that the case lacked a constitutional judge. The Mississippi Supreme *180 Court appointed Gray Evans to the case on the fourth day of August 2003 as allowed under Mississippi Code Annotated § 9-1-105. The trial judge was appointed to the case after the three circuit judges for DeSoto County recused themselves from the case. She further contends that Judge Gray Evans improperly tried the case because he failed to take the oath of office. Mississippi Constitution art. 6, § 155 gives the judicial oath of office and does not require filing the oath in the record of each case.
¶ 26. Furthermore, "It is well settled in this state that the acts of a de facto judge are valid, regardless of whether he was properly appointed or qualified or not. . . . [t]he appellant was not in position to challenge his right to hold office, the right to question his holding the office being for the state alone to raise in appropriate proceedings." Nelson v. State, 626 So.2d 121, 125 (Miss.1993)(citing Upchurch v. City of Oxford, 196 Miss. 339, 345, 17 So.2d 204 (1944)); Bird v. State, 154 Miss. 493, 500, 122 So. 539 (1929).
¶ 27. Champluvier also cites to Article I, sections 1 and 2, which act to separate the powers that belong to each branch of government as authority on this issue and neither have relevance to her contention. Champluvier also contends that the court did not appoint "official court reporters." This appears based on the fact that the record did not contain a copy of the court reporters oath. However, the trial transcripts give Michelle P. Haberstroh's certificate as the Official Court Reporter for the Seventeenth Circuit Court District. She correctly signed and certified that, "the above is a true and correct transcript" at the end of each transcript.
¶ 28. The Court Reporters and Court Reporting Statutes, Mississippi Code Annotated § 9-13-1 et seq. does not require the reporter to file their oath in the record in every case but merely put into the minutes of the court. Also the court would not reverse on this issue regardless. "We did not overrule case law making it the responsibility of the criminal defendant/appellant to ensure that there is record for the appeal." Jordan v. State 786 So.2d 987, 1006 (¶ 47) (Miss.2001). At trial she also objected to a deposition from her bankruptcy proceedings because the court reportedly failed to sign it but neither side admitted this deposition into evidence. Thus, the issue remains merit less.

VII.

Trial Court Allowed Witnesses and Jurors to Discuss the Case
¶ 29. Champluvier argues that the trial court erred by failing to grant a mistrial in the case. She alleges that jurors and witnesses and the witnesses amongst themselves discussed the case. The trial court also heard this motion during the trial and investigated the claim. The judge question these jurors, the witnesses, and Champluvier's witnesses to the commingling. The judge ruled that jurors could remain impartial and would not let anything the jurors might have overheard influence their decision.
¶ 30. A trial court does not abuse its discretion in denying a motion for a mistrial solely based upon conversations between a third party and a juror, "unless the record discloses either that the actual case at trial was discussed or other facts that could support a finding of possible undue influence." Collins v. State, 734 So.2d 247, 251 (¶ 15) (Miss.Ct.App.1999). The record does not show that the parties discussed the merits of the case or that they had any undue influence.

*181 VIII.

Trial Court Should Have Ruled $6000 in Evidence Inadmissable
¶ 31. Champluvier contends that the trial court improperly admitted the check she made out to herself for $6000 on the company's account into evidence. Her contention mainly stems from her previous contention that she could not be the agent and an owner member at the same time. As discussed in issue of error two, she clearly served as both a member of the company and an agent during the course of the furniture store.
¶ 32. This issue is also completely merit less since Champluvier first put a photocopy of the check into evidence herself. Also of note, when the State introduced the original check into evidence Champluvier failed to object. Thus the court properly admitted the check into evidence. "It is well settled law in Mississippi that failure to make a contemporaneous objection regarding the admission of evidence waives the argument for purposes of appeal." O'Hara v. Robinson, 904 So.2d 1110, 1112 (¶ 10) (Miss.Ct.App.2004).

IX.

Trial Court should have ruled $445.64 in evidence inadmissable
¶ 33. Champluvier also contends that the trial court improperly admitted the BankcorpSouth withdrawal copy that showed where she withdrew $445.64 into evidence. Champluvier objected after the judge admitted the copy into evidence and did not articulate the reason for her objection. The copy clearly follows the requirements for relevancy under the Mississippi Rules of Evidence 401 since the copy shows the withdrawal of funds that brought about the charges against Champluvier.
¶ 34. Rule 902(9) allows the self authentication of documents relating to the extent provided by general commercial law including bank-checks and other negotiable instruments for the payment of money. Furthermore, the district attorney also properly presented the document through someone with knowledge of Perfect Treasures bank accounts. Rule 1001(4) also allows a photocopy of the original bank withdrawal so that the presented copy was acceptable. Accordingly, this issue also lacks merit.

X.

Court Erred in Failing to Grant Motion To Squash Indictment with Supplemental Facts
¶ 35. Champluvier actually presented this argument in a pretrial motion and has failed to add any significant facts now. Champluvier contends that the trial court denied her equal protection of the law. The contention centers around her previous arguments about whether Mississippi Code Annotated § 97-23-19 only applies to corporations and whether a two year statute of limitations of limitations applies.
¶ 36. Point of error one discusses and refutes Champluvier's first contention involving Mississippi Code Annotated § 97-23-19. The applicable statute of limitations resides in Mississippi Code Annotated § 99-1-5. The statute specifically removes embezzlement from the general two year statute of limitations for criminal actions. Since embezzlement is clearly a crime Champluvier's argument that a civil statute of limitations is clearly wrong.

XI.

Appellant received Ineffective Assistance of Counsel
¶ 37. Champluvier next contends that she did not receive effective *182 assistance of counsel as guaranteed by the Sixth Amendment. Champluvier made this decision on her own and did not allow either of her two different court appointed attorneys the opportunity to represent her. In fact, the second court appointed attorney attend the trial as standby counsel and worked with Champluvier to assist her in jury selection and prepared her jury instructions. Instead of ineffective counsel, Vanderburg proved to be patient counsel since Champluvier referred to him to the jury as her, "ineffective counsel, same as no counsel," throughout the trial. "Though the right to counsel is absolute, the right to counsel of choice is not absolute." Atterberry v. State, 667 So.2d 622, 630 (Miss.1995).
¶ 38. Furthermore, ineffective assistance of counsel is a decision for the appellate court to decide and not the defendant. The trial court even presented Champluvier the opportunity to present her reasons that her appointed counsels were ineffective prior to the trial. Her arguments stemmed around the two appointed counsels inability to quote from memory the United States and Mississippi Constitutions and in the case of one attorney the fact that he had only won a few criminal cases as appointed counsel. "There is nothing more that the trial court could have donethe court had no right to insist on [the defendant]'s having counsel after he had refused it." Taylor v. State, 812 So.2d 1056, 1060 (¶ 18) (Miss.Ct.App.2001). In Taylor the defendant also went through numerous counsel changes. The trial judge told the defendant he could hire any attorney he wanted but kept an appointed counsel to serve as standby counsel for him as he proceeded pro se. Here the trial court also told Champluvier that it would hold her to the same standard as an attorney and the difficulty that presents if she could not find an acceptable attorney.
¶ 39. Champluvier also moved the court to remove Vandenberg as her counsel again after the trial and moved the court, "To Dismiss the Motion for Judgment Notwithstanding the Verdict that was filed by this Defendants Ineffective Counsel the same as No Counsel Attorney David Clay Vanderburg." So as Vanderburg attempted to assist Champluvier by filing one of the basic motions to protect her defenses she clearly acted contrary but within her rights asking the judge to dismiss a motion that Vanderburg filed asking the judge to reconsider the verdict against her. The court merely did as she asked and dismissed Vanderburg from the case leaving her to act purely pro se and without standby counsel.
¶ 40. Champluvier now contends that she did not receive effective assistance of counsel since her court appointed attorney did not appear at the sentencing hearing. The trial judge excused him because of the defendant's attitude and demeanor towards him during the trial since Champluvier would obviously not let him effectively help her.
¶ 41. This right may not be used to thwart the progress of a trial. Ladnier v. State, 273 So.2d 169, 173 (Miss.1973). This argument fails to meet the Strickland standard regardless since Champluvier would not let Vanderburg represent her, as evident from her jury trial. Thus, she lacks the showing of prejudice required to meet this standard.

XII.

Trial Court Erred in Instructing Proper Law to Jury
¶ 42. Champluvier contends that the judge improperly instructed the jury because he included the words "without authority" in two of the jury instructions. The judge replaced the words in the "wilfully, *183 unlawfully, and feloniously" from the indictment with "without authority." However, "synonymous phrases or interchangeable words may be used in a jury instruction and the jury still be properly instructed." Lancaster v. State, 472 So.2d 363, 367 (Miss.1985).
¶ 43. Champluvier further contends that the court erred by refraining from answering specific questions from the jury such as the legal definition of a LLC and to review testimony of witnesses. The responded to all the questions that they had all the law he could give them. "Our first recommendation is that the circuit judge determine whether it is necessary to give any further instruction. Unless it is necessary to give another instruction for clarity or to cover an omission, it is necessary that no further instruction be given." Girton v. State, 446 So.2d 570, 572 (Miss. 1984). Reviewing the questions of the jury, the trial court correctly noted that none of the questions reached the level of necessity to allow further comment.

XIII.

An Incomplete Record Denies the Appellant Due Process and Equal Protection
¶ 44. Champluvier states that exhibits one, two, and three were missing from the circuit courts file. These exhibits came from pre-trial motions and were not used during the actual trial. Exhibit three was a sentencing order for Thomas Ross that the State used in a motion in limine to prevent Champluvier from discussing his prior convictions base on M.R.E. 609.
¶ 45. The State noted that Champluvier failed to claim how any missing part of the record could change the outcome of her case. Since Champluvier represented herself and has actual knowledge of the missing exhibits she "is required to show specific prejudice by the missing portions of the record in order to mandate reversal and remand for a new trial." Watts v. State, 717 So.2d 314, 318 (¶ 10) (Miss.1998). In her rebuttal brief she argues that the exhibits one and two would show that she owned Perfect Treasures. Since the State stipulated as much at trial this fails to show any actual prejudice. She contends that exhibit three showed Thomas Ross's prior convictions which the court entered a motion in limine against Champluvier discussing. Since she could not reference to the prior convictions she fails to show how not having this document prejudiced her. Accordingly this issue has no merit.

XIV.

Trial Court Erred in Sentencing
¶ 46. Champluvier contends that the trial court erred in sentencing her by ordering her to pay restitution after her bankruptcy trial discharged her of any debts owed to L.L. Ross's estate. Mississippi Code Annotated § 99-37-1 et seq. grants judges the ability to order restitution in criminal cases. Section 99-37-3 specifically orders the court to look at the financial resources of the defendant, her ability to pay, and the rehabilitative effect of payment before ordering restitution. It does not prevent restitution from someone who went through bankruptcy proceedings. Finding this issue meritless, the trial court can require Champluvier to pay restitution despite her prior bankruptcy proceedings.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT I EMBEZZLEMENT AND SENTENCE OF FIVE YEARS AND COUNT II EMBEZZLEMENT AND SENTENCE OF FIVE YEARS TO RUN CONCURRENTLY TO THE SENTENCE IN *184 COUNT I, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF RESTITUTION IN THE AMOUNT OF $3,222.82 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE AND MYERS, P.JJ., CHANDLER AND ISHEE, JJ., CONCUR. GRIFFIS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND CHANDLER, JJ. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J. AND IRVING, J.
GRIFFIS, J., Concurring:
¶ 48. I concur with the majority and write separately because I am of the opinion that this case is very similar to our recent decision in Coleman v. State, 2004-KA-00346-COA, ___ So.2d ___ (Miss.Ct. App. Nov. 1, 2005). Rather than restate my opinion which was rendered in Coleman, I simply state that the facts of this case further illustrate my point.
¶ 49. The proper interpretation of the term "incorporated company," as used in Section 97-23-19, should include all entities that are created by statute under Title 79 of the Mississippi Code Annotated, which is titled "Corporations, Associations and Partnerships." A limited liability company, or "L.L.C.," is created under the Mississippi Limited Liability Company Act, which is codified at Mississippi Code Annotated Section 79-29-101 et seq. (Rev.2001). The Court's opinion addresses my dissent in Coleman and attempts to distinguish the factual scenario that we are presented with here. I am of the opinion that the majority is correct; it simply takes a longer route to the same conclusion.
BRIDGES AND CHANDLER, JJ., JOIN THIS SEPARATE OPINION.
BARNES, J., Dissenting:
¶ 50. In this Court's recent opinion in Coleman v. State, No.2004-KA-00346-COA, ___ So.2d ___ (Miss.Ct.App. Nov. 1, 2005), petition for rehearing filed Nov. 29, 2005, we held that the current version of Mississippi Code Annotated section 97-23-19 (Rev.2000) "includes corporations as the sole type of artificial persons who may be the object of embezzlement." Id. at ¶ 12 (emphasis added). The majority in this case makes a hasty departure from the holding in Coleman in ignoring the clear language of section 97-23-19 and thus enlarging the ambit of the statute. Because I do not believe that the plain language of section 97-23-19 includes limited liability companies (LLCs) as entities which may be the object of embezzlement, I respectfully dissent.
¶ 51. In Coleman, a church deacon was prosecuted for embezzlement pursuant to section 97-23-19. In that case, we reversed and rendered Coleman's conviction, holding that the State had failed to prove an essential element of the crime of embezzlement, namely, that Coleman embezzled funds belonging to an incorporated company. Id. at ¶¶ 12-17. In reaching this conclusion, this Court was "reminded that where the language used by the legislature in a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to the rules of statutory interpretation." Id. at ¶ 12 (citing State v. Heard, 246 Miss. 774, 781, 151 So.2d 417, 420 (1963)). We found that the plain, unambiguous language of section 97-23-19 made it clear that Coleman could not be convicted under the statute, since the misappropriated *185 funds were taken from an unincorporated church.
¶ 52. In the present case, we are again confronted with the task of determining whether section 97-23-19 allows an agent of an unincorporated body to be convicted of embezzlement. The majority holds that because LLCs and corporations share many similarities, the statute should apply to agents of LLCs as well as to agents of incorporations. Once again, the plain language of the statute does not permit this result. An LLC, by definition, is not an incorporated company, and regardless of the similarities between the two types of entities, the terms are not interchangeable. In fact, Mississippi Code Annotated section 79-29-104(1)(d) (Rev.2001) specifically prohibits an LLC from using the words "corporation" or "incorporated" in its name.
¶ 53. The legislature surely had some reason for employing such narrow and precise language in the embezzlement statute. The legislature, in its prerogative, certainly could have altered the statute to take into account more modern business entities, had it desired. The fact that the statute is not written more broadly should not be written off as legislative acquiescence, as the legislature had the opportunity to re-examine section 97-23-19 when it amended the statute in 2003. The legislature made no amendment broadening the business entities to which the statute applies, and we should not do so judicially.
¶ 54. Both the dissent in Coleman and the concurrence in the present case argue that any entity created under Title 79 of the Mississippi Code should be construed as an "incorporated company" for the purposes of section 97-23-19. However, because the language in section 97-23-19 is clear and precise, I believe that looking beyond the plain text of the statute is inappropriate. See Heard, 151 So.2d at 420 (stating that this Court will not resort to canons of statutory construction when the statute in question is clear and unambiguous).
¶ 55. The majority in this case reaches a result that directly contradicts our recent holding in Coleman. In my opinion, the outcomes simply cannot be harmonized; section 97-23-19 plainly does not allow agents of unincorporated entities to be subjected to prosecution for embezzlement. I respectfully dissent.
KING, C.J., AND IRVING, J., JOIN THIS SEPARATE WRITTEN OPINION.