# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00214-COA

KATHY DARLENE BREWER                                          APPELLANT

v.

KEMP BUSH                                                                 APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2019 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JAMES L. QUINN |
| ATTORNEYS FOR APPELLEE: | SAM STARNES THOMAS OWEN PATRICK TERRY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/24/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Kemp Bush enlisted his neighbors Kathy Darlene Brewer and Mack Busby to help put up a barbed wire fence on his property. Soon after beginning work, Brewer and Busby placed the spool of barbed wire on a wooden pole and then used a bungee cord to secure the pole to a utility vehicle. After they had traveled only a short distance in the utility vehicle, the bungee cord snapped and hit Brewer in the eye, causing serious injury. Brewer sued Bush, alleging that he failed to provide reasonably safe tools for the task. But at trial, the jury unanimously found in favor of Bush, and the trial judge later denied Brewer's motion for a new trial. On appeal, Brewer argues that the trial judge abused his discretion by

denying her motion for a new trial and by giving or refusing various jury instructions. For the reasons discussed below, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Bush was approximately eighty-five years old at the time of Brewer's injury. He had lived all his life on approximately 120 acres on Springhill Road across from West Jones High School in Jones County. Brewer and Busby both lived nearby and were friends of Bush. Brewer and Busby helped Bush with many projects around his farm, including operating tractors and plows, clearing brush, and planting vegetables. Bush testified that Brewer and Busby helped him "[m]ostly just in the summer." Busby testified that he, Brewer, or both of them worked on Bush's property every day or every other day during parts of the spring and summer. Among other tasks, Brewer and Busby helped Bush with his "community garden," and Bush allowed them to take vegetables from it. The garden was "big enough" for Bush to "give away a whole lot of stuff," and people in the community knew that Bush "would let anybody come" and pick vegetables from the garden. Bush was an accomplished beekeeper and honey producer, although he had ceased his commercial beekeeping operation. Bush helped Brewer and Busby by advising them on their own beekeeping operations. Busby stated that he and Brewer "help[ed] [Bush] because [Bush] helped [them]."

¶3. In May 2016, Bush asked Brewer and Busby to help him put up a barbed wire fence to keep his cows from getting into his garden. Bush had already purchased the barbed wire, metal T-posts, and other materials for the fence. On May 23, 2016, Brewer and Busby met

2

at Bush's property to work on the fence. They retrieved the spools of barbed wire from Bush's Suburban, placed them in Bush's utility vehicle, and drove to the garden. The utility vehicle was Brewer and Busby's "tool box," and they had permission to use the vehicle and any of the numerous tools in it whenever they were doing a project for Bush.

¶4.     Busby and Brewer both testified that they met with Bush in the morning prior to starting work on the fence and that Bush told them the barbed wire was in his Suburban. Busby and Brewer also both testified that Bush did not give—and they did not request—any instructions regarding what tools or methods to use to put up the fence. Busby testified, "[B]asically, I was getting my instructions from [Brewer] because she said, [']Look, I know how to do a fence. Mack, come on. Let's do it.[']" Busby stated that he relied on Brewer, not Bush, to tell him how to put up the fence. For his part, Bush did not recall speaking to either Brewer or Busby that morning, and Bush initially testified that he did not believe he even knew that Brewer and Busby were on his property prior to Brewer's injury. However, Bush later testified that he simply did not remember whether he talked to Busby or Brewer that morning.

¶5.     When they started work on the fence, Brewer and Busby attached the first spool of wire to a metal T-post, which Bush or Bush's daughter had set in the ground previously. Brewer then took a wooden pole from the back of the utility vehicle, ran it through the spool of barbed wire, and wedged one end of the pole into the back of the utility vehicle so that the wire would unroll as they drove. Busby then drove the utility vehicle forward with Brewer

3

in the passenger seat, but the wooden pole began to bend, and the spool of barbed wire fell off. Busby then found a bungee cord in the back of the utility vehicle. To keep the spool of barbed wire from falling off the pole, Busby inserted one of the bungee cord's hooks into a "split" in the top end of the pole and attached the other hook to the cab of the utility vehicle behind Brewer's head. Busby testified that the bungee cord "wasn't in the greatest shape in the world," but he "thought it would hold." But when Busby started driving the utility vehicle again, the bungee cord snapped, and the broken end struck Brewer in the right eye, causing serious injury and a loss of vision in that eye. At the time, Bush and his daughter were in his barn a significant distance away and had not been in the garden all day.

¶6. Brewer subsequently filed suit against Bush in circuit court, alleging that Bush failed to exercise reasonable care for her safety as an invitee and failed to provide reasonably safe tools for the work he had "engaged" her to perform. Following discovery, Bush filed a motion for summary judgment, arguing that he did not breach any duty owed to Brewer as an invitee and that the sole proximate cause of the "freak accident" was Brewer's and/or Busby's decision to use the bungee cord. In response, Brewer argued, inter alia, that her alleged arrangement with Bush—that she worked on his farm in exchange for his help with her beekeeping—amounted to an "implied" "contract for hire." She further argued that Bush breached his duty to provide her with safe tools for the job he had hired her to do.

¶7. The circuit court held that Bush "did not breach any duty owed to" Brewer as an invitee; therefore, the court granted summary judgment in favor of Bush "as to any claims

4

based on premises liability."[1]  However, the court found that there was a dispute of fact as to whether Bush possessed a right of control over Brewer and, thus, a genuine dispute as to whether there was an—admittedly atypical—employer/employee relationship.  The court further found that if a jury concluded that an employer/employee relationship existed, there was also a dispute of fact as to whether Bush breached a duty to provide reasonably safe tools to Brewer.  Accordingly, the court denied summary judgment with respect to that claim.

¶8.     The case proceeded to a jury trial, and the jury returned a unanimous verdict in favor of Bush.  Brewer filed a motion for a new trial, arguing, among other things, that the jury's verdict was against the overwhelming weight of the evidence.  The trial judge denied the motion, and Brewer filed a notice of appeal.

¶9.     On appeal, Brewer argues that the jury's verdict was against the overwhelming weight of the evidence.  Brewer also argues that the trial judge erred by modifying her proposed jury instructions in a way that misled the jury on the issue of proximate causation, by giving Bush's proposed jury instruction on "simple tools," by giving Bush's jury instruction on proximate causation, and by giving the jury four alternative verdict forms.  Finally, Brewer argues that she was prejudiced because Bush proposed a large number of jury instructions, resulting in a lengthy charge conference that delayed the trial.  We address each of these issues in turn below.

---

[1] On appeal, Bush does not challenge the circuit court's grant of partial summary judgment.  Therefore, we do not address that issue.

5

## ANALYSIS

### I. The jury's verdict was not against the overwhelming weight of the evidence, and the trial judge did not abuse his discretion by denying Brewer's motion for a new trial.

¶10. A trial judge may order a new trial if "the verdict is against the overwhelming weight of the evidence." *Bobby Kitchens Inc. v. Miss. Ins. Guar. Ass'n*, 560 So. 2d 129, 132 (Miss. 1989). A motion for a new trial is addressed to the discretion of the trial judge. *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶18) (Miss. 2000). However, that discretion "should be exercised with great caution" and "invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (quoting *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971)).

¶11. When we review the denial of a motion for a new trial, "[t]wo high standards of deference apply." *Weber v. Est. of Hill*, 335 So. 3d 1030, 1038 (¶35) (Miss. 2021). "First, this Court affords the trial court substantial deference to its determination on the weight of the evidence issue and whether to grant a new trial." *Id.* "This Court will reverse a trial judge's denial of a request for new trial only when such denial amounts to a[n] abuse of that judge's discretion." *Bobby Kitchens Inc.*, 560 So. 2d at 132. "A court abuses its discretion by relying on an erroneous or improper statement of the law or by applying improper or erroneous facts." *Weber*, 335 So. 3d at 1038 (¶35) (quoting *Redmond v. State*, 288 So. 3d 314, 316 (¶7) (Miss. 2020)). Our standard of review is highly deferential because we recognize that the trial judge is in a "superior position . . . to decide such matters." *Amiker*,

6

796 So. 2d at 948 (¶21). "It has long been recognized that the trial judge is in the best position to view the trial." *Id.* at 947 (¶16). Unlike an appellate court, which must rely on a "cold, printed record," the trial judge hears and observes the witnesses firsthand and "smells the smoke of the battle." *Id.*

¶12. "Second, this Court gives great deference to the jury verdict itself." *Weber*, 335 So. 3d 1038 (¶36) (quotation marks omitted). Therefore, we "must resolve all conflicts in the evidence and every permissible inference from the evidence in the appellee's favor." *Id.* (quotation marks omitted). In a case tried before a jury, "[t]he weight and credibility of the witnesses . . . was for the jury, who were free to accept or reject whatever part of their testimony they chose." *Fleming v. Floyd*, 969 So. 2d 868, 878 (¶25) (Miss. 2007) (quoting *BFGoodrich Inc. v. Taylor*, 509 So. 2d 895, 903 (Miss. 1987)). Such determinations of weight and credibility are for the jury alone, and "this Court is required to defer to the jury[.]" *Weber*, 335 So. 3d at 1038 (¶36). Put simply, "[t]his Court . . . is not the jury." *Fleming*, 969 So. 2d at 878 (¶25) (quoting *BFGoodrich Inc.*, 509 So. 2d at 903).

¶13. Brewer contends that the jury's verdict is contrary to the overwhelming weight of the evidence because the evidence established that she was working under a "contract for hire" and, further, that Bush failed to provide her with reasonably safe tools needed for the job. However, applying our doubly deferential standard of review, we cannot say that the trial judge abused his discretion by denying Brewer's new trial motion.

¶14. To begin with, the jury could have found that Bush never employed Brewer under a

contract for hire. The jury was instructed,

> If you find from the evidence in this case that
>
> 1)     Darlene Brewer by mutual consent with Kemp Bush agreed to and did do farm work and beekeeping work for Kemp Bush on a regular basis; and
>
> 2)     Kemp Bush by mutual consent with Darlene Brewer agreed to and did regularly provide assistance and advice to Darlene Brewer on the business of beekeeping for the production of honey; and
>
> 3)     The advice and assistance in beekeeping and honey production was of value to or benefit Darlene Brewer and the farm work and beekeeping work of Darlene Brewer was of value or benefit to Kemp Bush; and
>
> 4)     Kemp Bush had the right to control the work and the conduct of Darlene Brewer while on his premises on May 23, 2016.
>
> Then the Defendant Kemp Bush owed a duty to the Plaintiff Darlene Brewer to use reasonable care to provide suitable and safe tools, equipment and implements for the work she performed on his property, and to provide reasonably safe methods and rules for the work; and the duty of Kemp Bush cannot be assigned or entrusted to someone else.[2]

¶15.    As the trial judge recognized in his order denying summary judgment, there was a genuine dispute of material fact—i.e., a jury question—as to whether a master-servant relationship existed because there was a genuine dispute as to whether Bush possessed a right to control Brewer's work.[3] Brewer testified that Bush was not her "boss," that she was not his "employee," and that she "didn't have to listen" to him—although she also said she

---

[2] This instruction (P-4A) was offered by Brewer and given with only minor modifications by the trial judge, to which Brewer assented.

[3] The Mississippi Supreme Court has held that proof of a "right of control[] is the determinative factor in ascertaining whether a[] . . . relationship is that of master-servant." *Patton-Tully Transp. Co. v. Douglas*, 761 So. 2d 835, 840 (¶19) (Miss. 2000).

"would always do what he asked" "when [she] got around to it." She said she "asked [Bush] for knowledge of beekeeping, and [she] would do things for him around [his] place." She said she helped Bush "out of the goodness of [her] heart . . . and because [they] made a deal together." She testified that she helped Bush at least in part "because he had no one else to" help him, because he was her close friend, and because she "was always taught to help other people when they're down." Brewer also testified that Busby and others "help[ed]" her with her own beekeeping operation "because [she] helped them." However, she did not consider those people to be "obligated" to her in any way. Busby also testified that he and Bush "helped" each other. In addition, as discussed above, the large garden that Brewer and Busby were working to fence when Brewer was injured was described as a "community garden," and Bush was happy for Brewer, Busby, and anyone else to take vegetables from it. The totality of the evidence presented at trial was open to more than one interpretation, and a rational jury could have found that no master-servant relationship existed because Bush never exercised any real "control" over Brewer. *Patton-Tully Transp. Co.*, 761 So. 2d at 840 (¶19). A rational jury could have found that the assistance that Brewer and Busby provided was nothing more than neighbors and friends voluntarily helping one another.

¶16.     In addition, even if the jury found that a contract for hire did exist, the jury could have found that the tools Bush provided were, in and of themselves, reasonably safe, thereby fulfilling any duty owed to Brewer. "[T]he duty of the master in regard to tools and places to work is not that of an insurer, is not an absolute duty, but is simply to exercise reasonable

9

care to furnish the servant with reasonably safe tools and appliances, and likewise as to a safe place to work." *Gulfport Creosoting Co. v. White*, 171 Miss. 127, 132, 157 So. 86, 87 (1934). Here, the evidence did not establish that Bush even provided the tools in the utility vehicle for the purpose of unrolling barbed wire. Brewer and Busby testified that the utility vehicle served as a general "toolbox" for them to use in a wide variety of projects. Brewer acknowledged that she decided to use the wooden pole, and Busby selected the bungee cord. Bush did not suggest or recommend that they use either of those items. There were also ordinary ropes in the utility vehicle that they could have used to secure the wooden pole—instead of the bungee cord. Alternatively, Brewer and Busby could have unrolled the barbed wire simply by walking with the pole, as Busby testified they had done on at least one prior occasion. Based on this evidence, a jury could have found that the tools provided were reasonably safe and that Brewer was injured as a result of a freak accident or Busby's ill-fated decision to use the bungee cord, not any breach of duty by Bush.

¶17. Finally, Brewer argues that Bush breached his duty to her because he did not provide her with a tool that Bush's deceased brother had fashioned for unrolling barbed wire. This homemade tool, which was apparently somewhere on the property, consisted of a long metal pole with metal clips and plywood to hold a spool of barbed wire. However, the mere existence of such a tool—even if it might have been somewhat better suited to the task at hand—does not show that the tools that were provided were unreasonably safe or that the jury's verdict was against the overwhelming weight of the evidence. As the Mississippi

Supreme Court has stated, "[t]he master is not required to furnish the newest, safest and best machinery, appliances, and places for work. His obligation is met when he furnishes such as are reasonably safe and suitable for the purposes had in view." *Cherry v. Hawkins*, 243 Miss. 392, 398, 137 So. 2d 815, 817 (1962). On the evidence presented, a rational jury could have found that the tools actually provided were reasonably safe and that Bush did not breach any duty owed to Brewer. Accordingly, the trial judge did not abuse his discretion by denying Brewer's motion for a new trial.

## II. The jury was fairly instructed on the issue of proximate causation.

¶18. Brewer next argues that the trial judge erred by modifying two of her proposed jury instructions (P-2 and P-3) and refusing her proposed verdict form (P-8). Brewer contends that the net effect of the modified instructions (P-2A and P-3A) and the verdict forms given was "to instruct the jury that a verdict in [her] favor . . . required a finding that [Bush's] negligence was the sole proximate cause of the accident."

¶19. "It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *InTown Lessee Assocs. LLC v. Howard*, 67 So. 3d 711, 721 (¶33) (Miss. 2011) (quoting *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)). "In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole." *Fielder v. Magnolia Beverage Co.*, 757 So. 2d 925, 929 (¶10) (Miss. 1999). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly,

11

announce the applicable rules of law, no error results." *Intown Lessee Assocs. LLC*, 67 So. 3d at 721 (¶33) (quoting *Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009)).

¶20. Here, P-2A instructed the jurors on Bush's duty of reasonable care, explaining that Bush was negligent if he failed to use reasonable care. Instruction P-2A stated that if the jurors found Bush was negligent, they should "consider the other instructions of the Court." P-3A then instructed, in relevant part:

> If, from a preponderance of the credible evidence, you find that such negligence, if any, of Kemp Bush was a proximate contributing cause of the accident in question, *then you shall determine the percentage or degree of fault of Kemp Bush in accordance with the other instructions of the Court.* If you find that such negligence, if any, of Kemp Bush was the sole proximate cause of the accident, then your verdict shall be for Darlene Brewer.

(Emphasis added). As stated in instruction P-3A, certain "[o]ther instructions of the Court" (D-6 and D-7) did in fact explain to the jurors how to apportion fault if they found that Bush's negligence was a proximate contributing cause of Brewer's injury and that Busby's and/or Brewer's negligence also contributed to the injury. Instruction C-10 directed the jurors to determine damages and return a verdict in favor of Brewer if they found that Bush's negligence was the sole proximate cause of the accident.

¶21. Thus, if the jurors had found that Bush's negligence was a proximate contributing cause of the accident—but not the sole cause—and then followed the remaining instructions given to them, the jury would have returned a verdict in favor of Brewer. They also would have apportioned fault and determined Brewer's damages in accordance with the court's instructions. "Generally speaking, our law presumes that jurors follow the trial judge's

12

instructions, as upon their oaths they are obliged to do." *Young v. Guild*, 7 So. 3d 251, 263 (¶39) (Miss. 2009). Thus, we will presume that the jurors in this case followed the trial judge's instructions and were not confused or misled. In addition, as stated above, "the instructions actually given *must be read as a whole.*" *Fielder*, 757 So. 2d at 929 (¶10) (emphasis added). The fact that the judge also instructed the jurors how to proceed if they found that Bush's negligence "was the sole proximate cause of the accident" does not make the instructions as a whole misleading. When read "as a whole," the instructions fairly stated "the applicable rules of law." *Intown Lessee Assocs. LLC*, 67 So. 3d at 721 (¶33). Therefore, "no error result[ed]." *Id.*

### III. The trial judge did not abuse his discretion by giving Bush's proposed instruction regarding "simple tools."

¶22. Next, Brewer contends that jury instruction D-18A should not have been given. Instruction D-18A states:

> If the tools or instrumentalities furnished by Kemp Bush to Darlene Brewer were simple tools or instrumentalities, the defects of which, if any, would or should have been easily understood by Darlene Brewer, then Kemp Bush would not be required to exercise reasonable care with respect to the safety of such simple tools or instrumentalists that he did supply.

Brewer argues that the instruction was not supported by the evidence because there were no "simple tools" in this case. She also argues that the instruction was "peremptory."

¶23. We disagree. The instruction is a correct statement of Mississippi law. *See, e.g.*, *Jones v. S. United Ice Co.*, 167 Miss. 886, 890-91, 150 So. 652, 653 (1933) (stating that "the rule that the master must exercise reasonable care to furnish a servant with safe tools [is] not

13

applicable to such simple tools as an ordinary ax"—or a "chisel," a railroad "track wrench," or a "pair of ice tongs"—"where the servant possessed ordinary intelligence and could easily understand when defects existed"). In addition, the instruction was applicable to the facts of this case because the wooden pole and bungee cord that Brewer and Busby used were simple tools.

¶24. Finally, the instruction was not "peremptory." It instructed the jury that "Bush would not be required to exercise reasonable care with respect to the safety of simple tools or instrumentalities" that he provided to Brewer. But it did *not* state that the provision of such "simple tools" satisfied Bush's duty "to use reasonable care to provide [Brewer with] suitable and safe tools, equipment and implements for the work she performed on his property," as stated in jury instruction P-4A. In other words, based on all the jury instructions, the jury could have found that it was not reasonable for Bush to provide only "simple tools" for the job at hand. Instruction D-18A was not peremptory because it did not direct the jury to return a verdict for Bush or to reach any particular conclusion. In addition, as discussed above, the instruction was an accurate statement of Mississippi law, and it was supported by the evidence. Therefore, the trial judge did not abuse his discretion by giving it.

### IV. The trial judge did not abuse his discretion by giving Bush's proposed instruction on foreseeability and proximate causation.

¶25. Brewer next argues that the trial judge erred by giving jury instruction D-15 regarding foreseeability and proximate causation. Instruction D-15 stated:

> You are instructed that Kemp Bush is not liable for all injuries that flow from

14

any negligence on the part of Kemp Bush or form any wrongful act on the part of Kemp Bush but only for those injuries that could have been reasonably foreseen and anticipated. The injuries suffered by Darlene Brewer must result from a chain of a natural and unbroken sequence from any negligence on the part of Kemp Bush for Darlene Brewer to recover damages from Kemp Bush. Kemp Bush is not liable for injuries or damages which are remote or collateral, or which are from a remote, improbable or extraordinary occurrence, although such occurrence is within the range of possibilities flowing from any negligent act on the part of Kemp Bush.

Brewer argues that the instruction should not have been granted because it "omits the necessary qualification . . . that while an element of proximate cause is that an ordinarily prudent person should have reasonably foreseen that some injury might occur as [a] result of the negligence, it is not necessary to foresee the particular injury, the particular manner of the injury, or the extent of the injury."

¶26. We disagree. The instruction is an accurate statement of Mississippi law. Indeed, it is a model jury instruction. Mississippi Model Jury Instructions (Civil) § 14:2 (Miss. Jud. Coll. 2d ed. 2021); *Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 475 (¶81) & n.9 (Miss. 2010); *Dillon v. Greenbriar Digging Serv. Ltd.*, 919 So. 2d 172, 178 (¶¶19-20) (Miss. Ct. App. 2005). Because the instruction was also applicable to the facts of this case, the trial judge did not abuse his discretion by giving it. *Utz*, 32 So. 3d at 474-76 (¶¶79-81); *Dillon*, 919 So. 2d at 178-79 (¶¶19-23).

¶27. The point that Brewer makes—that it is not necessary for a tortfeasor "to foresee the particular injury"—is also a correct statement of Mississippi law and a model jury instruction. *See* Mississippi Model Jury Instructions (Civil) § 14:3 (Miss. Jud. Coll. 2d ed.

15

2021) (citing cases).  During the charge conference, counsel for Brewer made this point generally, stating, "I was looking for an old copy of model jury instructions—I thought the rule was that—and still believe the rule is . . . that there's no duty to anticipate the particular injury.  All you have to . . . foresee is some injury might probably occur as a result of the negligence."   However, it is not clear from the transcript that counsel was stating an objection to instruction D-15.[4]  More important, Brewer did not propose an instruction on this matter.  The model instruction cited just above (§ 14:3) would have been a proper instruction in this case.  However, Brewer did not request it.  Under these circumstances, we cannot say that the trial judge abused his discretion by giving an instruction (D-15) that is both an accurate statement of Mississippi law and relevant to the facts of this case.  As stated above, "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results."  *Intown Lessee Assocs. LLC*, 67 So. 3d at 721 (¶33) (quoting *Davis*, 18 So. 3d at 847 (¶14)).

## V.      The submission of four verdict forms was not reversible error.

¶28.   In her statement of issues, Brewer asserts that the "submission of four verdict forms . . . result[ed] in conflicting and confusing instruction to the jury on the ultimate issue."

---

[4] *See* M.R.C.P. 51(b)(3) ("No party may assign as error the granting or the denying of an instruction unless he objects thereto at any time before the instructions are presented to the jury . . . . All objections shall be stated into the record and shall state distinctly the matter to which objection is made and the grounds therefor."); UCRCCC 3.07 ("The attorneys must dictate into the record their specific objections to the requested instructions stating the grounds for each objection.").

However, in the body of her brief, Brewer addresses only a more specific alleged error: that one of the four verdict forms (D-7) permitted the jury to apportion fault to Busby. Brewer argues this was error because in Bush's answers to interrogatories, which were read into the record at trial, Bush stated that Brewer's injuries were caused solely by her own negligence or a "mere accident" and did not assign fault to Busby.

¶29. As an initial matter, we note that Brewer failed to raise this issue during the charge conference. During the conference, the trial judge and Bush's counsel discussed the evidence of Busby's negligence, and the trial judge correctly noted that the jury could assign fault to Busby even though he was not a party to the case.[5] Brewer did not interject to argue that Busby should not be included on the verdict form. In the absence of a proper objection, we conclude that the issue is waived. *See* M.R.C.P. 51(b)(3); UCRCCC 3.07; *Smith ex rel. Smith v. Miss. Coast OB/GYN*, 325 So. 3d 723, 735 (¶41) (Miss. Ct. App. 2021).

¶30. We also conclude that Busby's inclusion on the verdict form was not error. "Answers to interrogatories are admissible as *non-binding* evidentiary admissions." *BFGoodrich Inc.*, 509 So. 2d at 904 (emphasis added). "When there is conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all the answers and resolve the conflict."

---

[5] *See* Miss. Code Ann. § 85-5-7(5) (Rev. 2021); *Est. of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1276 (¶44) (Miss. 1999) (holding that a jury may apportion fault "to any participant to an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial").

17

*Id.* This is particularly true with respect to "contention interrogatories" that seek to discover an opposing party's contentions as opposed to specific facts within the party's personal knowledge. 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2181 (3d ed. 2010). Here, because the evidence at trial would have permitted the jury to assign fault to Busby, the trial judge did not err by including Busby on one of the verdict forms.

¶31. Finally, to the extent that Brewer argues that the verdict forms were conflicting or prejudicially confusing, we disagree. The trial judge gave the jury four alternative verdict forms, which were read in the following order:

- C-10 provided for a verdict for Brewer and award of damages if the jury found that Bush was negligent and that his negligence was the sole proximate cause of Brewer's injuries;

- D-8 provided for a defense verdict;

- D-6 provided for an apportionment of fault and determination of damages if the jury found that both Bush and Brewer were negligent and proximate contributing causes of the accident; and

- D-7 provided for an apportionment of fault and determination of damages if the jury found that Bush, Brewer, and Busby were all negligent and proximate contributing causes of the accident.

¶32. While one or more of these forms could have been combined, the trial judge did not abuse his discretion or commit reversible error by giving them. Read as a whole, the verdict forms fairly stated the law and guided the jury. And, as stated above, we presume that the jury followed the instructions given to them. *Young*, 7 So. 3d at 263 (¶39). Accordingly, this

18

issue is without merit.

## VI. The number of jury instructions Bush proposed did not result in prejudice to Brewer.

¶33. Prior to trial, Bush filed eighteen proposed jury instructions. Of these, one was a pro forma request for a peremptory instruction, which was denied, and Bush withdrew two others at the charge conference. Brewer argues that the sheer number of instructions that Bush offered resulted in a four-hour charge conference and prejudiced her presentation of her case. She also argues that Bush violated Rule 3.07 of the Uniform Civil Rules of Circuit and County Court Practice, which provides in relevant part:

> At least twenty-four hours prior to trial each of the attorneys must number and file the attorney's jury instructions with the clerk, serving all other attorneys with copies of the instructions. Except for good cause shown, the court will not entertain a request for additional instruction or instructions, which have not been pre-filed. At the conclusion of testimony, the attorneys must select no more than six jury instructions on the substantive law of the case from the instructions prefiled and present them to the judge. The court, for good cause shown, may allow more than six instructions on the substantive law of the case to be presented.

UCRCCC 3.07.

¶34. We find no reversible error. To begin with, Brewer failed to object to the number of instructions offered or allege a violation of Rule 3.07 in the trial court. Therefore, any such objection is waived. *See, e.g.*, *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) (explaining that issues not raised in the trial court and presented to the trial judge for a decision will not be considered on appeal).

¶35. In addition, the Supreme Court has stated that Rule 3.07's "six-instruction limit is a

19

numerical beginning point[,] not an inflexible rule." *Blue v. State*, 716 So. 2d 567, 573 (¶25) (Miss. 1998) (quotation marks and ellipses omitted). "[T]he number of instructions submitted to the court and the jury lies within the sound judicial discretion of the trial judge who may limit or expand 'for good cause shown.'" *Id.* (other quotation marks omitted) (quoting UCRCCC 3.07). In the absence of an objection by Brewer, we cannot say that the trial judge erred by allowing Bush to present more than six instructions.[6]

¶36. Finally, although Brewer claims that Bush caused a "four (4) hour charge conference" that unduly delayed trial, the record does not show the actual length of the conference. After both sides rested, the judge excused the jurors for lunch and told them to return at 2 p.m., but the record does not show what time the jurors were excused. The judge later mentioned that one juror had stated that he would need "to make a telephone call to get somebody to pick up his child" if he had to stay "past 5:15." The judge stated that it was "very likely that [the trial would go] past 5:15," and the parties agreed that the juror could borrow a phone to make a call. This discussion occurred before jury instructions or closing arguments had been given. The record does not show what time the jurors returned to the courtroom, began deliberations, or ultimately returned their verdict. Under the circumstances, the record simply does not support Brewer's claim about the length of the charge conference. *See*

---

[6] We note that the six-instruction rule is not a limit on the number of instructions that may be pre-filed prior to trial. Rather, it is a limit on the number of "instructions on the substantive law of the case" that counsel may present to the judge at the close of the evidence, which the judge may waive "for good cause shown." UCRCCC 3.07.

*Abercrombie v. Abercrombie*, 193 So. 3d 680, 683 (¶9) (Miss. Ct. App. 2016) ("Factual assertions raised in appellate briefs are not evidence and will not be used as grounds for reversing the trial court's judgment."). Moreover, there is nothing in the record to support Brewer's claim that she was prejudiced by the length of the conference. Accordingly, this issue is both waived and without merit.

## CONCLUSION

¶37. We cannot say that the jury's verdict is against the overwhelming weight of the evidence or that the trial judge abused his discretion by denying Brewer's motion for a new trial. In addition, the trial judge did not abuse his discretion or commit any reversible error in giving or refusing any proposed jury instruction or by providing the jury the verdict forms.

¶38. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**